LEHIGH VALLEY RAILROAD COMPANY, A CORPORATION, PLAINTIFF-RESPONDENT, v. MARY CHAPMAN, DECEASED, LATE OF PERTH AMBOY AND HER HEIRS, DEVISEES AND PERSONAL REPRESENTATIVES, ETC., *ET AL.*, DEFENDANTS-APPELLANTS.

Argued April 11, 1961—Decided June 5, 1961.

*Mr. Charles W. Hutchinson* argued the cause for plaintiff-respondent (*Messrs. Lamb, Langan & Blake,* attorneys).

*Mr. John V. R. Strong* and *Catherine D. McAndrew* argued the cause for defendants-appellants (*Messrs. Strong & Strong,* attorneys; *Catherine D. McAndrews,* on the brief).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff filed a complaint in the Chancery Division to quiet title to certain lands situate in Perth Amboy, title to which had been obtained by condemnation by Easton and Amboy Railroad Company (Easton). Defendants, the heirs and devisees of Mary Chapman, deceased, appeal from the resulting judgment declaring that the plaintiff has a fee simple absolute title.

The facts are as follows: Easton was created as a result of the merger of Bound Brook and Easton Railroad Company (Bound Brook), created by *L.* 1872, *c.* 110, *p.* 314, and Perth Amboy and Bound Brook Railroad Company, created by *L.* 1858, *c.* 119, *p.* 278. The merger was au-

thorized by *L*. 1872, *c*. 450, *p*. 1017, which provided, in part, that Easton "shall in all respects act and be governed by the laws now in force respecting the Bound Brook and Easton Railroad, as far as the same may be applicable." Easton was merged into Lehigh Valley Company of New Jersey (Lehigh) by agreement of consolidation filed in the office of the Secretary of State of New Jersey on July 29, 1903. Lehigh was subsequently merged into plaintiff Lehigh Valley Railroad Company by agreement effective January 1, 1950 and filed in the office of the Secretary of State of New Jersey.

By virtue of the power granted by the act of incorporation of Bound Brook (*L*. 1872, *c*. 110, *p*. 314) Easton surveyed and laid out a railroad route from the village of Bound Brook to Perth Amboy and filed a copy of said survey in the office of the Secretary of State. It was thereby disclosed that certain lands owned by Mary Chapman, situate in the City of Perth Amboy, were required for the construction of said railroad. Upon the inability of Easton and Chapman to agree for the purchase of said lands, Easton made an application to the Supreme Court of New Jersey on October 12, 1872, as provided by *L*. 1872, *c*. 110, *section* 8, for the appointment of commissioners to examine and appraise the said land and assess the damages of Chapman. The court thereupon appointed three commissioners by order dated October 20, 1872. Said order provided, in part:

"Whereupon, it being made to appear to me that neither the said company nor its agents could agree with the said Mary Chapman for the use or purchase of said required land, I did * * * [designate] as the time and place for the appointment by me of three * * * commissioners *to examine and appraise the land* and assess the damages of the said Mary Chapman pursuant to said acts; * * *.

* * * I, Edward W. Scudder, Justice of the Supreme Court of the State of New Jersey, * * * do hereby appoint Joseph L. Crowell, Wright Robins and Samuel Dally; three disinterested, impartial and judicious freeholders, residents in the county of Middlesex commissioners *to examine and appraise the land* of said Mary Chapman required as aforesaid, and to assess damages to be paid

by the said Easton and Amboy Railroad Company for the land of said Mary Chapman so required as aforesaid, and her damages as aforesaid, pursuant to the provisions of the said acts, * * *." (Emphasis supplied)

On December 2, 1872 the above named commissioners made a report which, in part, reads:

"* * * we did thereupon * * * proceed to view and examine the said lands and premises mentioned and described in the said order and appointment, *and to make a just and equitable estimate and appraisement of the value of the same,* and assessment of damages to be paid by the Easton and Amboy Railroad Company for such lands and damages aforesaid; * * *

We, the said commissioners do report that the sum of two thousand and seven hundred dollars *for the value of the lands aforesaid,* and the sum of two hundred and seventy-four dollars & fifty cents for the damages aforesaid, be paid by the said The Easton and Amboy Railroad Company to the said Mary Chapman making together the sum of two thousand nine hundred and seventy-four dollars & fifty cents for said lands and damages aforesaid, and for all other damages which we, as commissioners as aforesaid are authorized to assess under and by virtue of the acts mentioned and referred to in the said order and appointment in which estimate is included the cost of making and maintaining unnecessary said lands." (Emphasis supplied)

Said report was duly filed in the County Clerk's office, Middlesex County, as provided by *L.* 1872, *chapter* 110, *section* 8.

Easton, having paid the amount so determined to be due to Chapman, entered into possession of the said lands and constructed a railroad thereon according to said survey. The lands have continued in the peaceable possession of either Easton, Lehigh or Lehigh Valley Railroad Company.

By agreement dated January 31, 1958, plaintiff, having abandoned the use of said land for its railroad purposes, entered into a contract with Fords Porcelain Works (Fords) for the sale thereof. The agreement of sale provided, *inter alia,* that in the event plaintiff's title to the premises proved to be unmarketable, the purchaser had the right to rescind the contract. The title insurance company to which Fords applied for title insurance questioned whether plaintiff had

an absolute fee simple title. Plaintiff thereupon filed this action to quiet title to the lands. Issue having been joined, plaintiff moved for a summary judgment, which was granted on June 7, 1960. Defendants appealed to the Appellate Division and this court certified the appeal on its own motion.

Plaintiff contends that it obtained a title in fee simple absolute by virtue of the above referred to condemnation proceedings. The defendants, on the other hand, contend that plaintiff obtained a title in fee simple determinable, conditioned upon the continuous use of the lands for railroad purposes, and that upon the abandonment by plaintiff of that use, fee simple title absolute automatically reverted to them as heirs and devisees of Mary Chapman.

Although numerous decisions appear in our state reports involving the title to realty of various railroad companies, this is the first time that we have been confronted with the direct question of whether a railroad obtained a fee simple absolute or a fee simple determinable title through condemnation.

At the outset it is appropriate that we repeat certain requirements for and distinctions in various titles which are qualified rather than absolute and certain basic rules of statutory construction. Those interests in real estate which are so qualified fall generally into one of three categories, *i. e.*, (1) estates on limitation, (2) estates on condition, and (3) estates on conditional limitation.

An estate on limitation, sometimes referred to as a base fee, qualified fee, determinable fee, or fee simple defeasible, 4 *Thompson on Real Property*, § 2171, *p.* 708 (1940), *Restatement of the Law of Property*, § 43 (1936), is an estate in fee simple which automatically expires upon the occurrence of a given event. The original grantor retains a possibility of reverter upon the breach of the stated condition and his grantee may convey his estate but the latter's grantee takes title subject to the same conditions and imperfections which adhered to it originally. *Thompson on Real Property, supra, p.* 708; *Restatement,*

*supra,* § 23; *Carpender v. New Brunswick,* 135 *N. J. Eq.* 397 (*Ch.* 1944); *Freeholders of the County of Cumberland v. Buck,* 79 *N. J. Eq.* 472 (*Ch.* 1911). Such estate is ordinarily created by the use of words denoting duration of time such as "while," "during," "so long as" and the like, *Freeholders of the County of Cumberland v. Buck, supra,* although those or similar expressions are not an essential ingredient in the creation of an estate on limitation. See *Oldfield v. Stoeco Homes, Inc.,* 26 *N. J.* 246 (1958).

An estate on condition is similar to an estate on limitation but is distinguishable therefrom in that upon the occurrence of the specified limitative event the divesture of the title of the original grantee or his successors is not automatic. The holder of the reversionary interest must re-enter in order to defeat the originally granted fee. Parenthetically, it should be noted that the actual re-entry is no longer required, the right to re-enter being sufficient to sustain an action of ejectment. The estate of the original grantor or his successors has been denominated a power of termination. *Oldfield v. Stoeco Homes, Inc., supra; Cornelius v. Ivins,* 26 *N. J. L.* 376 (*Sup. Ct.* 1857). The classical words for an estate on condition are "on condition that," "provided." *Freeholders of the County of Cumberland v. Buck, supra.*

An estate on conditional limitation is one which is conveyed to one person, so that upon the occurrence or failure of occurrence of a contingent event the estate shall pass from the original grantee to a third person. *Carpender v. New Brunswick, supra.*

A fee simple absolute title may be obtained by condemnation, if the statute authorizing the taking so provides. *Currie v. New York Transit Co. and National Docks Co.,* 66 *N. J. Eq.* 313 (*E. & A.* 1904); *Valentine v. Lamont,* 13 *N. J.* 569 (1953); *Hazek v. Greene,* 51 *N. J. Super.* 545 (*App. Div.* 1958), certif. den. 28 *N. J.* 58 (1958).

Although the taking of the right, title and interest of an owner of realty by condemnation should not be greater

than necessary to effectuate the public use which called the public power into play, a statutory authorization to take a fee simple title when some lesser interest only was required to accomplish the public purpose the legislature had in view will not invalidate the statute. This is a legislative rather than a judicial question. *Valentine v. Lamont, supra,* 13 *N. J.,* at *pp.* 576, 578; *United States Pipe Line Co. v. Delaware, L. & W. R. R. Co.,* 62 *N. J. L.* 254 (*E. & A.* 1898).

Having disposed of the foregoing basic concepts concerning qualified fee simple title generally and title by condemnation authorized by statute, we proceed to the specific problem with which we are confronted.

Opinions from other states concerning the type of title obtained by railroads through condemnation, dealing as they do with the particular statutes of those states, are not particularly helpful in seeking the solution of the inquiry here involved. It likewise must be remembered that until the passage of the General Railroad law, *L.* 1873, *c.* 413, *p.* 88, charters were generally granted for railroad purposes in this State by special acts. The language granting the power of condemnation in those numerous enactments, although very similar, was not always identical. Consequently, even those opinions of our courts treating directly or indirectly with the quality of title obtained by railroads through condemnation are not necessarily apposite.

Originally, there seems to have been some doubt in this State as to whether a railroad corporation could or did, in any event, acquire more than an easement in lands acquired by condemnation. See *New York, Susquehanna and Western Railroad Co. v. Trimmer,* 53 *N. J. L.* 1 (*Sup. Ct.* 1890); *Taylor v. New York and Long Branch R. R. Co.,* 38 *N. J. L.* 28 (*Sup. Ct.* 1875). The question was finally laid at rest by *Currie v. New York Transit Company and National Docks Ry. Co., supra,* which held in 66 *N. J. Eq.,* at *p.* 316 that "The quantity of interest which a railroad corporation obtains in land taken by it under the power of eminent domain is that

which the statute conferring the power authorizes it to acquire. The legislature may authorize the taking of a fee, or any less estate, in its discretion."

Counsel for defendants cites *Currie v. New York Transit Co. and National Docks Ry. Co., supra,* and *Manning v. New Jersey Short Line Railroad,* 80 *N. J. L.* 349 (*E. & A.* 1910), for the conclusion that the plaintiff obtained by condemnation only a fee simple determinable title.

In considering these two cases, it must be borne in mind that title was obtained in *Currie* by condemnation under the General Railroad law, *supra,* and in *Manning* under the Eminent Domain Act, *L.* 1900, *c.* 53, *p.* 79. However, there is grave doubt that there would eventuate any different result from that herein expressed had title been obtained in the matter *sub judice* by condemnation under either of said statutes.

In *Currie,* plaintiffs sought to compel the removal of a pipe line installed by N. Y. Transit Co. with the consent of National Docks Ry. Co., from a portion of a railroad right of way obtained by condemnation by a predecessor in title of National Docks Ry. Co. under the General Railroad law. Plaintiffs contended that National Docks Ry. Co. obtained "by the condemnation proceeding 'a right of way for railroad purposes over and across the land in question, leaving the fee therein, and in and to the soil thereof, vested in the appellants.' " 66 *N. J. Eq.,* at *p.* 314. Plaintiffs there argued, in part, that the language of that statute, which reads: "* * * and on payment or tender of the amount awarded as hereinafter provided, the said company is hereby empowered to enter upon and take possession of the said lands or materials *for the purposes aforesaid* [railroad purposes]" (emphasis supplied) restricted the condemnor to grant of an easement. The question, therefore, was whether an easement or some type of fee simple title was obtained by condemnation. The issue was not whether the fee was absolute or determinable. The court was not required to decide this question. In sustaining the dismissal of plain-

tiffs' complaint by the Chancery Court, the Court of Errors and Appeals said, however, at *p.* 318:

"Where land is held by a railroad company under a deed containing the words of this statute, it can hardly be doubted that the conveyance, having been made in consideration of the payment of the full value of the land, operates to strip the grantor of all *present* estate, right, title and interest in the land, and to vest the same in the company *so long at least as its corporate life continues to exist and so long as its charter prescribes,* \* \* \*." (Emphasis supplied)

The phrase "at least" is plainly indicative that the court was intentionally not determining, at that point, whether the fee was absolute or determinable.

And again, at *p.* 318:

"It is contended that, because the right of the company to enter and take possession of the land, after payment of the award, is given by the statute 'for the purposes aforesaid,' the landowner still retains such an interest in the land as will enable him to restrain an unauthorized use of it by the company. But the words quoted do not operate to restrict the quantity of the interest which passes to the company by virtue of the condemnation proceeding, *or to reserve to the landowner any rights in the lands taken.* They merely limit the uses to which the lands may be put. And it is to be observed that this limitation is not confined to lands taken by the exercise of the power of eminent domain. The charter of the company (the General Railroad law) imposes it equally upon lands acquired by conveyance from the owner. Whether the land be acquired by the one method or the other, when the company enters upon and takes possession thereof it does so for the purpose of subjecting it to the uses which its charter authorizes.

Nor does the fact that, *while in possession* and so using the land, the company subjects it to an additional and unauthorized use operate divest it, to any extent, of the estate which it has acquired therein. *McKelway v. Seymour,* 5 *Dutch.* 321.

The complainants' bill therefore was properly dismissed, for, as the condemnation proceeding vested in the Bergen Neck Railroad Company *the whole present estate in the land, and that estate was not divested by the act of its successor* in subjecting the land to the additional and unauthorized use complained of, the complainants had no interest therein for the protection of which they were entitled to invoke the aid of a court of equity. *Barnett v. Johnson,* 2 *McCart.* 481." (Emphasis supplied)

■ The court, by the second quotation above, held that in spite of the fact that the General Railroad law contained the quoted proviso, a provision absent in *L.* 1872, *c.* 110, the railroad obtained a fee simple estate. The court did not hold that the condemnor obtained a fee simple determinable. The gist and effect of the court's conclusion by way of *dictum* is that the railroad obtained a fee simple title and that plaintiffs had no further interest in the land for the protection of which they were entitled to invoke the aid of a court of equity. Although *dicta* on the question of the type of fee simple title which was obtained and hence not binding, it was *dicta* of our court of last resort and entitled to great weight. *Delaware, L. & W. R. Co. v. Division of Tax Appeals,* 2 *N. J. Super.* 93 (*App. Div.* 1949), affirmed 3 *N. J.* 27 (1949), appeal dismissed, 338 *U. S.* 946, 70 *S. Ct.* 488, 94 *L. Ed.* 583 (1950); *English v. Stokes Molded Products, Inc.,* 43 *N. J. Super.* 68 (*App. Div.* 1956); *Hughes v. Eisner,* 14 *N. J. Super.* 58 (*App. Div.* 1951), appeal dismissed 8 *N. J.* 228 (1951).

*Manning* was an appeal from a condemnation award under the Eminent Domain Act, *supra.* The question there involved was whether plaintiffs were entitled to compensation for the additional burden placed upon their remaining lands for the lateral support of the railroad right of way. In sustaining that right, the court said (80 *N. J. L.,* at *p.* 352):

"The condemnation, therefore, is a legal substitute for a voluntary conveyance, and carries with it every right that is necessary to enable the company 'to have, hold, use, occupy, possess and enjoy' the land for the special purposes of a railroad. The landowner can no more derogate from the condemnation than he can from an express grant."

Far from being authority to sustain defendants' position, *Currie* and *Manning* are at least implied authority for plaintiff's position.

We come, then, to a construction of the specific statute here involved.

It must be remembered that the reversion alleged by defendants results from a forfeiture. A forfeiture is:

"* * * The common and general definition of the word 'forfeit' is 'lost by omission or negligence or misconduct.' It is in this general sense that the word 'forfeiture' is used when it is said that equity will not actively lend its aid to enforce a forfeiture or that equity will relieve against unjust forfeitures. A forfeiture is in the nature of a penalty for the doing or the failure to do a particular thing, *e. g.*, using leased premises for a purpose prohibited by the lease, failing to pay rent, and the like. To incur a forfeiture is to fail to keep an obligation." *Rankin v. Homestead Golf & Country Club, Inc.*, 135 *N. J. Eq.* 160, 165 (*Ch.* 1944).

See also *Jador Service Co. v. Werbel,* 140 *N. J. Eq.* 188 (*E. & A.* 1947). Penalties and forfeitures are not favored at law, *Grigg v. Landis,* 21 *N. J. Eq.* 494 (*E. & A.* 1870), but, contrawise, it has been said that the "law abhors a forfeiture." *Oldfield v. Stoeco Homes, Inc., supra.* A recognized rule of construction dictates that an instrument, when a choice exists, is to be construed against rather than in favor of a forfeiture. *Basic Iron Ore Co. v. Dahlke,* 108 *N. J. Eq.* 68 (*E. & A.* 1930). And where it be doubtful whether a clause in a deed is a covenant or a condition, the former is preferred. *Woodruff v. Woodruff,* 44 *N. J. Eq.* 349 (*Ch.* 1888) ; *Oldfield v. Stoeco Homes, Inc., supra.*

*L.* 1872, *c.* 110, *p.* 314, *section* 1 provides that Bound Brook being a body corporate and politic, "shall be capable of purchasing, holding and conveying any lands, tenements, goods and chattels whatsoever, necessary or expedient to the objects of this incorporation." *Section* 7 provides that when Bound Brook shall have determined upon the location of its road and deposited a survey thereof in the office of the Secretary of State it shall then be lawful for the said company "to enter upon, take possession of, hold, have, use, occupy" lands shown as necessary for its purposes by said survey upon payment of compensation as thereafter provided in said statute.

*Section* 8 provides:

"That when the said company, or its agents, cannot agree with the owner or owners of such required lands or materials for the use or purchase thereof \* \* \*, a particular description of the lands or materials so required for the use of said company in the construction of said road, shall be given in writing, under oath or affirmation of some engineer or proper agent of the said company, and also the name or names of the occupant or occupants, if any there be, and of the owner or owners, if known, \* \* \* to one of the justices of the supreme court of this state, who shall cause the said company to give notice thereof \* \* \* [that] he shall appoint \* \* \* three disinterested, impartial and judicious freeholders \* \* \* to examine and *appraise the land* or materials, and to assess the damages \* \* \* and it shall be the duty of the said commissioners \* \* \* to meet at the time and place appointed and proceed to view and examine the said land or materials, and to make a *just and equitable estimate or appraisement of the value* of the same, and *assessment of damages* that shall be paid by the said company for such lands or materials and damages aforesaid \* \* \* which report shall be made in writing, \* \* \* and filed \* \* \* in the clerk's office of the county in which the lands or materials are situated, to remain on record therein, which report or copy thereof, certified by the clerk of the said county, shall at all times be considered as *plenary evidence of the right of the said company to have, hold, use, occupy, possess and enjoy* the said lands or materials, \* \* \*." (Emphasis supplied)

*Section* 9, which provides for an appeal in the event of dissatisfaction of either party with the determination of the condemnation commissioners by directing an issue for trial by jury, provides further, in part:

"and it shall be the duty of the said jury to assess the value of the said land or materials and damages sustained; and if they shall find a greater sum than the commissioners shall have awarded in favor of the said owner or owners, then judgment thereon, with costs, shall be entered against the said company \* \* \* but if the said jury shall be applied for by the said owner or owners, *and shall find the same or a less sum than the company shall have offered* or the commissioners awarded, then the said cost to be paid by said applicant or applicants, \* \* \* but such application shall not prevent the company from taking the said land or materials upon filing the aforesaid report, the value in damages being first paid \* \* \*." (Emphasis supplied)

Bound Brook was authorized by *section* 1 of the charter act to hold and convey any lands and tenements without any restriction that a subsequent conveyance by it should be for railroad use only. This is plainly indicative of the right to obtain and convey a title in fee simple absolute.

Additionally, the filed report of the condemnation commissioners is directed by *section* 8 to be considered "plenary evidence of the right of said company to have, hold, use, occupy, possess and enjoy the said lands." As stated in *New York, Susquehanna and Western Railroad Co. v. Trimmer, supra,* 53 *N. J. L.,* at *p.* 3:

"There seems to be no reason why this language, as it stands in this statute, is to be interpreted differently from what it would if it were found in a deed from a landowner to the company."

Such words contained in a deed would suffice, absent express words of limitation, to convey a fee simple absolute title. Counsel for defendants conceded on the oral argument that a voluntary conveyance to Easton without specific limitation therein contained would serve to convey a fee simple absolute title. Title obtained by condemnation was of the same quality as title obtained by a voluntary conveyance. The statute makes no distinction or difference in the titles obtained by either method. A landowner can no more derogate from the title authorized to be acquired by condemnation than he can from a title obtained by his voluntary grant. See *Manning v. New Jersey Short Lines R. R. Co., supra; New York, Susquehanna and Western Railroad v. Trimmer, supra; Currie v. New York Transit and National Docks Ry. Co., supra; DeCamp v. Hebernia Railroad Co.,* 47 *N. J. L.* 43 (*Sup. Ct.* 1885).

Research has not disclosed a New Jersey case which directs the manner in which the condemnation commissioners appointed under *L.* 1872, *c.* 110, or any of the other special charter acts of railroad companies containing similar words, shall appraise the "value" of the "land"—whether the appraisal shall be predicated upon the full reasonable fair

market value recognizing that the condemnee is divested of all present title or possibility of future title or whether an allowance should be made from such full value for the possibility of reverter or the power of termination. However, the discussions in *Van Wickle v. Camden Rail Road Co.*, 14 *N. J. L.* 162 (*Sup. Ct.* 1833) and *New Jersey Rail Road and Tr. Co. v. Suydam*, 17 *N. J. L.* 25 (*Sup. Ct.* 1839); *Coster, et al. v. New Jersey Railroad Co.*, 23 *N. J. L.* 227 (*Sup. Ct.* 1852), which involved statutory language, although not identical, yet comparable to the statute *sub judice*, lead to the conclusion that value was to be ascertained upon the basis that the condemnee retained no possibility of reverter or power of termination since there is no intimation that allowance from the actual full market value was to be made for the value of such possibility or power.

Defendants do not suggest that the amount directed to be paid by the commissioners and actually paid by the plaintiff for the lands *sub judice* was less than the full fair market value at the time of the exercise of the power of eminent domain. What this court said in *Valentine v. Lamont*, 13 *N. J.* 569 (1953), at *p.* 579, is particularly apt in this connection:

"* * * Where, as here, the land is being acquired for the purposes of schools it is extraordinarily difficult to see how anything less than a fee simple absolute title was intended by the statute. The condemnation for this use involved exclusive possession and an exclusive right of possession that might have lasted forever, and the payment in the statutory manner of the full market value of the property, which figure was based on the full right, title and interest of the owner, carries with it a presumption of the full payment for the estate in fee. The owner was entitled to no less than full compensation and was justly compensated, and it would be, as Mr. Justice Case pointed out in *Carroll v. City of Newark, supra, p.* 331, 'an exaggeration of the essence of private ownership and a mulcting of the public purse to hold that when an individual has had his lands taken for public use and has been fully paid for those lands, he, or his heirs after him, should be entitled to payment anew whenever the character of the public use changes, simply because it does change.'

On the other hand, it would be highly inequitable to merely compensate an owner where we have such a taking as we have here

on the basis of a fee simple determinable title which necessarily would be on a monetary value considerably less than he would be entitled to receive for a fee simple absolute title. For he would normally be deprived of the dominion and control over his right, title and interest in the property, not only during his own lifetime but that of any of his heirs, subject only to the theoretical contingency that at some future indefinite time the public use might be abandoned and he have a right of reverter in the property. Such a result, in the absence of clear and express language in the statute that only a fee simple determinable title was to be taken, would make a fraud of the constitutional guaranty that private property shall not be taken for public use without just compensation."

That the statute contemplated a fee simple absolute title by condemnation is further demonstrated by the provision for costs upon appeal, *section 9, L.* 1872, *supra.* The criterion of who shall bear the costs is whether the final award on an appeal is greater or less than "the company shall have offered or the said commissioners awarded." Clearly this provision is indicative of a concept that the same consideration shall be paid upon condemnation as upon a voluntary conveyance, *i. e.*, the fair market value. It is only logical to conclude that the condemnor was to be vested with the identical type of title regardless of the manner employed in obtaining title since the same consideration was to be paid in either event.

We conclude that plaintiff has a title in fee simple absolute. Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.