JERSEY CITY REDEVELOPMENT AGENCY, (JCRA), PLAINTIFFS, v. TUG AND BARGE URBAN RENEWAL CORP., ET AL.

Superior Court of New Jersey
Law Division Hudson County

Decided February 16, 1987—As Supplemented January 21, 1988.

90

*John J. Curley,* Esq., appearing for plaintiffs.

*Dennis J. Drasco,* Esq., appearing for defendant.

*Ronald E. Wiss,* Esq., *Kimmelman, Wolff & Samson* Attorney for Newport Development Corp.

Deputy Attorney General *William E. Andersen* Dept. of Law & Public Safety.

HUMPHREYS, A.J.S.C.

The clash between landholders and the State over rights to tidelands has engaged our jurisprudence for many years.* This case is another chapter in that struggle.

Plaintiff JCRA condemned land owned by Tug and Barge. Some of the land is tideland and therefore subject to claims of the State under the Public Trust Doctrine. *Bor. of Neptune City v. Bor. of Avon-By-the-Sea,* 61 *N.J.* 296, 308 (1972). The State and Tug and Barge have agreed to a settlement of the State's tideland claim. The Tidelands Resource Council has approved the settlement. However, JCRA will not consent to the settlement contending that the State's claim is valid and that Tug and Barge does not have any right to the disputed tidelands.

---

*This is a refinement of a letter opinion.

The State moves for the entry of a consent judgment vesting title and providing for other relief. Since JCRA and the intervenor Newport will not consent, a "consent" judgment cannot be entered. *City of Jersey City v. Roosevelt Stadium,* 210 *N.J.Super.* 315, 326–327 (App.Div.1986).

Tug and Barge moves for summary judgment on the tidelands issue. JCRA opposes the motion on factual and legal grounds. All counsel agree that the legal grounds can and should be determined at this time. The court will therefore rule on them in this opinion. The court will also schedule a status conference to determine whether genuine factual issues exist.

Tug and Barge does not contend that it has only revocable rights over the tideland. *See U.S. v. Cox,* 190 *F.*2d 293 (10th Cir.1951), *cert. denied* 342 *U.S.* 867, 72 *S.Ct.* 107, 96 *L.Ed.* 652, and case note in 25 *Temple Law Quarterly,* pp. 385–388 (1952). Tug and Barge contends instead that it has fee simple title to the disputed tideland and should consequently receive just compensation therefor in this condemnation action. The basis of Tug and Barge's claim is the United Companies Act of 1869, Chapter 386 of the Laws of New Jersey.

The central issue is what rights to the tidelands were acquired by Tug and Barge's predecessor under the United Companies Act. Tug and Barge contends that under that Act, Tug and Barge's predecessor in title acquired a license to the tidelands which would ripen into fee simple ownership if the tidelands were reclaimed and improved; that the tidelands were so reclaimed and improved; and that Tug and Barge's predecessor thereby acquired fee simple title which it conveyed to Tug and Barge.

JCRA contends that Tug and Barge does not have fee simple ownership to the tidelands since:

(1) Ownership can only be acquired under the United Companies Act upon the occurrence of certain conditions. Whether those conditions have occurred raises factual issues which "may

require plenary hearing after further research into official records and discovery." (JCRA brief, p. 14); and

(2) The Legislature in enacting the United Companies Act, did not intend to give the United Companies a fee simple ownership "capable of transfer separate from the upland and for uses not related to rail transportation." (JCRA brief, p. 16).

JCRA argues that when Tug and Barge acquired title in 1978 and began to use the land for private shipyard purposes, the cessation of railroad use of the pier within the disputed area resulted in a revocation of the license granted under the United Companies Act. At that point, JCRA argues, exclusive dominion and control of lands reverted to the State which holds the title for the benefit of the public pursuant to the Public Trust Doctrine.

Simply stated the basic question resolved in this opinion is whether the Legislature in enacting the United Companies Act intended to grant fee simple title to the United Companies upon their reclaiming and improving the tidelands, or only a lesser right of ownership which would be revoked if the tidelands were later conveyed to another for other than railroad purposes.

The court after careful consideration concludes that basic principles of real property law and court decisions clearly establish that the Legislature intended the former. Hence if the tidelands here were reclaimed and improved as set forth in the United Companies Act, then the United Companies obtained a fee simple title not subject to later divestment. Consequently Tug and Barge as the successor in title to the United Companies has fee simple ownership of the tidelands in question and is entitled to compensation therefor in this condemnation action.

### I.

Tidelands are owned by the State and are impressed with a public trust for the benefit of all. *Bell v. Gough*, 23 *N.J.L.* 624 (E & A 1852); *O'Neill v. State Highway Dept.* 50

*N.J.* 307 (1967); *Lusardi v. Curtis Point Property Owners Ass'n.,* 86 *N.J.* 217, 228 (1981). However, under common law, riparian owners along the Hudson River had the right to fill in and reclaim riparian land to the waterline at low tide. *Bailey v. Driscoll,* 19 *N.J.* 363, 369 (1955). This local custom was sanctioned and regulated by the Wharf Act, Laws of 1851, Chapter 330. *See Id.* at 371–372.

In 1869 the Legislature enacted the United Companies Act, Chapter 386 of the Laws of 1869. Under that act the United Companies were authorized to reclaim and erect wharves and other improvements in front of any of their lands adjoining Kill Von Kull or any other tidewaters, and "when so reclaimed and improved to have, hold, possess and enjoy the same as owners thereof" subject to certain provisos. The United Companies did reclaim and improve certain tidelands now owned by JCRA. Specifically, a pier was constructed, waterways were filled in, and certain buildings were erected and used by the United Companies for railroad purposes.

Tug and Barge acquired the land in 1978. Its deed encompassed the disputed tidelands. Tug and Barge has used the property as a private shipyard. JCRA contends that upon the conveyance to Tug and Barge in 1978, railroad use ceased and as a consequence title to the disputed tidelands reverted to the State.

The basic position of JCRA is that the Legislature in enacting the United Companies Act intended that the United Companies upon reclamation of the tidelands would acquire only a limited ownership, specifically ownership lasting only so long as the tidelands were connected with the rest of the property and used for railroad purposes. JCRA asserts that the Wharf Act had approved the local custom of permitting riparian lands to be filled to a limited boundary, namely, to the waterline at low tide. However, under the United Companies Act, the property owner could fill and erect piers for a much greater distance; that is, up to the lines established by the Board of Commission-

ers appointed in 1864. JCRA contends that since the Wharf Act was repealed for this part of the Hudson River on the same day that the United Companies' grant was enacted, the Legislature intended that the more extensive filling permitted under the United Companies Act would not ripen into a fee simple ownership capable of transfer separate from the upland and for uses not related to rail transportation.

JCRA also argues that the use of the personal pronoun "they" in the United Companies Act supports JCRA's position. The Appellate Division opinion in *River Development Corp. v. Liberty Corp.*, 51 *N.J.Super.* 447, 482 (App.Div.1958) concluded that the word, " 'they' can refer to no one other than The United Companies." Hence, JCRA argues, successors in title to the United Companies who do not continue railroad use were not intended by the Legislature to have an interest in the tidelands.

JCRA's argument is unpersuasive. The fact that the Legislature in adopting the United Companies Act permitted the United Companies to fill in property to a greater distance than previously permitted, does not logically indicate that the Legislature thereby intended to restrict the United Companies acquisition of fee ownership through such filling. The repeal of the Wharf Act simply meant that the Legislature intended that the rights given thereunder to others than the United Companies would no longer be available. That repeal does not indicate that the Legislature intended thereby to curtail the rights being given to the United Companies under the United Companies Act.

The Appellate Division's use of the word "they" fairly read in context does not connote that title would be revoked if a conveyance for other than railroad purposes took place *after* the tidelands were reclaimed and improved. The court was discussing the effect of conveyance *prior* to reclaiming. Moreover other language in the Appellate Division opinion implies that *after* reclaiming, fee simple title is secured. *See River*

*Development Corp. v. Liberty Corp.*, 51 *N.J.Super.* 447, 472 (App.Div.1958).

If the Legislature had intended that the rights being granted to the United Companies upon reclaiming were something less than fee simple ownership, specifically only a right of ownership which was contingent upon (a) ownership of the entire tract; and (b) continued use related to rail transportation, then the Legislature could easily have so stated in the United Companies Act. A restriction of that type is well known in real property law. *Lehigh Valley R.R. Co. v. Chapman*, 35 *N.J.* 177 (1961); *Oldfield v. Stoeco Homes, Inc.*, 26 *N.J.* 246 (1958) and *Hagaman v. Bd. of Ed. of Tp. of Woodbridge*, 117 *N.J.Super.* 446 (App.Div.1971). Such a restriction is commonly called an "estate on limitation" and is sometimes referred to as a "base fee", a "qualified fee", a "determinable fee", a "fee simple defeasible" or a "fee simple determinable." *Lehigh Valley R.R. Co. v. Chapman*, 35 *N.J.* 177, 182 (1961); and *Hagaman v. Bd. of Ed. of Tp. of Woodbridge*, 117 *N.J.Super.* 446, 451 (App.Div.1971).

Such a fee automatically expires upon the occurrence of a given event. *Ibid.* "Such estate is ordinarily created by the use of words denoting duration of time such as 'while', 'during', 'so long as' and the like." These or similar expressions are not an essential ingredient in the creation of an estate on limitation. *See Lehigh Valley R.R. Co. v. Chapman*, 35 *N.J.* 177, 183 (1961) but "[t]he absence of some of these phraseologies make it likely that a court will find such a covenant, a trust, or some other type of interest less drastic in its sanctions." *See Hagaman v. Bd. of Ed. of Tp. of Woodbridge*, 117 *N.J.Super.* 446, 451 (App.Div.1971) quoting 2 *Powell, Real Property*, § 187 at 44 (1967).

In determining the meaning of a conveyance the "prime consideration is the intent of the parties." *See Hagaman v. Bd. of Ed. of Tp. of Woodbridge*, 117 *N.J.Super.* 446, 451 (App.Div.1971). However, "[l]anguage in an instrument which

is alleged to create a fee simple determinable ... is strictly construed. 'A recognized rule of construction indicates that an instrument, when a choice exists, is to be construed against rather than in favor of a forfeiture.'" *Id.* at 453 and *Lehigh Valley, R.R. Co. v. Chapman,* 35 *N.J.* 177, 188 (1961). The law "abhors a forfeiture." *Oldfield v. Stoeco Homes Inc.,* 26 *N.J.* 246, 257 (1958).

In *Lehigh Valley* the plaintiff railroad obtained certain property by condemnation. The issue there as here was whether the railroad thereby obtained an absolute fee simple title or only a fee simple determinable title conditioned upon the continuous use of the land for railroad purposes. The applicable statute (Laws of 1872, Chapter 110) provided that the report of condemnation will be considered "plenary evidence of the right of the said company to have, hold, use, occupy, possess and enjoy the said lands or materials ..." *See Lehigh Valley R.R. Co. v. Chapman,* 35 *N.J.* 177, 189 (1961).

The Supreme Court in *Lehigh* quoted an earlier case for the proposition that " '[t]here seems to be no reason why this language, as it stands in this statute, is to be interpreted differently from what it would if it were found in a deed from a landowner to the company.' " *Id.* at 190 quoting *New York Susquehanna and Western Railroad Co. v. Trimmer,* 53 *N.J.L.* 1 (Sup.Ct.1890). The Court in *Lehigh* said that "[s]uch words contained in a deed would suffice, absent express words of limitation, to convey a fee simple absolute title." *Lehigh Valley R.R. Co. v. Chapman,* 35 *N.J.* 177, 190 (1961).

In this case the Legislature provided in the statute that the United Companies once they had reclaimed and improved the land would "have, hold, use, occupy, possess and enjoy the said lands or materials." *United Companies Act of 1869,* Chapter 386 of the Laws of New Jersey. That language is basically the same as the language in the *Lehigh Valley* case which the Supreme Court said conveyed a "fee simple absolute title."

Furthermore the Court concluded in the *Lehigh Valley* case that the railroad was authorized by the statute to "hold and convey any lands and tenements without any restriction that a subsequent conveyance by it should be for railroad use only." *Lehigh Valley R.R. Co. v. Chapman*, 35 *N.J.* 177, 190 (1961). The Supreme Court said "this is plainly indicative of the right to obtain and convey a title in fee simple absolute." *Ibid.*

Here the statute is also barren of any language suggesting that any subsequent conveyance by the United Companies should be for railroad use only. As in *Lehigh* that absence is "plainly indicative" of an intention to "convey a title in fee simple absolute" to the United Companies.

JCRA relies on an observation made by Justice Hall in *Bor. of Neptune City v. Bor. of Avon-By-the-Sea*, 61 *N.J.* 296, 308 (1972).

The observation to be made is that the statements in our cases of an unlimited power in the legislature to convey such trust lands to private persons may well be too broad. It may be that some such prior conveyances constituted an improper alienation of trust property or at least that they are impliedly impressed with certain obligations on the grantee to use the conveyed lands only consistently with the public rights therein.

JCRA contends that in light of that statement, the license given to the United Companies should be impliedly impressed with an obligation to use the conveyed lands only for railroad purposes. However, JCRA has not advanced any persuasive reason in support of impressing such an obligation. This is not the case of a gift by the Legislature. The United Companies paid $500,000 plus an additional sum of $20,000. Those were very substantial amounts in 1869. In addition, the United Companies would not receive any ownership rights unless and until they reclaimed the land. It is highly unlikely that for those very substantial considerations, the Legislature and the United Companies intended that the rights of ownership being granted the United Companies would cease upon the properties no longer being used for railroad purposes.

JCRA argues that the small amount of the $20,000 payment allegedly paid for 100 parcels as compared to the $500,000 payment allegedly paid for only one tract indicates that the Legislature intended the $20,000 grant to be limited to a revocable license. (*See* tr. 12/18/86, pp. 12, 13). However, the $20,000 appears to have been a "further" consideration not something separate and apart from the $500,000. *See City of Hoboken v. Penn. Railroad Co.*, 124 *U.S.* 656, 684, 8 *S.Ct.* 643, 651, 1 *L.Ed.* 65 (1887) and the language "the further sum" in the *United Companies Act of 1869*, Chapter 386, p. 1026 of the Laws of New Jersey. Thus no legislative intent to limit the grant here can be gleaned from the $20,000 payment. Moreover, JCRA's argument is fatally weakened by the absence of any limiting language in the *United Companies Act.*

JCRA argues that a license by the Legislature is to be strictly construed in favor of the State as the custodian of the public rights and against the licensee. Here, however, we are not construing the scope or duration of the license. We are construing instead a right of ownership over tidelands given to the United Companies upon the reclaiming and improving of the tidelands. The proper and ancient rule of construction of a grant of an estate in land is that the grant should be strictly construed in favor of an intention to create an absolute fee simple title rather than the creation of a fee simple determinable. *See* the *Hagaman, Lehigh Valley* and *Oldfield* cases cited *supra.*

JCRA's argument ignores the force and significance of the millenia old historical record favoring the creation of fee simple estates. The estate in fee simple grew out of the conflict between lords and tenants in feudal times. The lords wished to have the land revert to them at the death of the tenant. The tenants wished to have the right to transfer the land at their death free from the claims of the lord and also the presumptive heirs of the tenants. Thus the estate in fee simple was born and developed. *See 2 Powell on Real Property,* ¶ 175 *et seq.*

In early common law an estate in fee simple was distinguished from lesser forms of ownership by the use of certain words in the conveyance. As Littleton stated "If a man would purchase lands or tenements in fee simple, it behoveth him to have these words in his purchase, to have and to hold to him and to his heirs ..." *See Powell, supra,* at ¶ 180.

As Justice Burling pointed out in *Oldfield v. Stoeco Homes Inc.,* 26 *N.J.* 246, 257 (1958) "[t]he ancient land law imputed a thaumaturgic quality to language."

This requirement that "magic" words be used to create an estate of fee simple has long been abolished in the vast majority of the American states. *See Powell, supra* at ¶ 180. These statutes provide that an otherwise effective conveyance creates an estate in fee simple absolute in the conveyee unless the conveyance expresses an intent to create some other or less estate. *Powell, supra* at ¶ 184.

New Jersey's earliest statute to that effect was enacted in 1795 (1 *General Statutes of N.J.,* Chapter 128, Section 1; *Powell, supra,* footnote 70), and was followed by a series of other statutes all favoring the creation of an absolute fee simple estate unless limiting words or intent unmistakably indicated the contrary. *See New Jersey Laws* of 1899, Chapter 208; *New Jersey Laws* of 1902, Chapter 231; the *New Jersey Laws* of 1912, Chapter 293 and *N.J.S.A.* 46:3–13.

■■ The words in the United Companies Act, "to have, hold, possess and enjoy the same as owners thereof" are consistent with customary language then and now creating fee simple estates, and are clearly inconsistent with any intention to create a fee simple determinable. *See Lehigh Valley R.R. Co. v. Chapman,* 35 *N.J.* 177 (1961). The Legislature is presumed to be familiar with the law of the State both statutory and common Law. *Yanow v. Seven Oaks Park, Inc.,* 11 *N.J.* 341, 350 (1953).

Thus JCRA's argument that the Legislature nevertheless intended to create a lesser estate runs directly counter to a

steady current of history in New Jersey and elsewhere favoring the creation of absolute fee simple estates and the construing of conveyancing language to that end.

Furthermore, JCRA's construction is inconsistent with the opinions of the various courts in *River Development Corp. v. Liberty Corp.*, 45 *N.J.Super.* 445 (Ch.Div.1957), 51 *N.J.Super.* 447 (App.Div.1958), *aff'd.* 29 *N.J.* 239 (1959). Judge (later Justice) Haneman concluded at the trial level that after the requisite reclamation or improvement had been accomplished "[t]here is no doubt" that the lands would be held "on the same terms on which all other lands are held by private persons under absolute titles." *River Development Corp. v. Liberty Corp.*, 45 *N.J.Super.* 445, 469 *quoting City of Hoboken v. Pennsylvania R.R. Co.*, 124 *U.S.* 656, 8 *S.Ct.* 643, 1 *L.Ed.* 65 (1887). Judge Haneman further concluded that by virtue of the common law and by virtue of the Wharf Act upon such reclamation and improvement " 'every previous right of the State of New Jersey therein, whether proprietary or sovereign, is transferred or extinguished.' " *Ibid.*

Judge Goldmann's opinion in the Appellate Division is to the same effect. He concluded that prior to the reclaiming and improving, the United Companies "acquired nothing more than a revocable license to reclaim and improve, and *thus secure the fee* in, submerged land abutting the Fisher Cove uplands." *(emphasis added)*. *Id.* at 472. However, Judge Goldmann implied that once the right to reclaim was exercised, the tideland could be separated from ownership of the upland and could be "conveyed out". *(See* 51 *N.J.Super.* 447, 481 (App.Div.1958).

The Supreme Court in the *River Development* case also expressed the view that reclaiming within a reasonable period of time and pursuant to the conditions in the United Companies Act would result in acquiring "actual ownership of the fee." *See* 29 *N.J.* at 241. *See also* language to the same effect in *City of Hoboken v. Penn. R.R.*, 124 *U.S.* 656, 688, 691, 8 *S.Ct.* 643, 653, 655, 31 *L.Ed.* 543 (1887).

Justice Proctor stated in his concurring opinion in the Supreme Court that he would limit the affirmance to the "ground set forth in Subdivision IX of Judge Goldmann's opinion, i.e., that the license or privilege granted by the 1869 act could not be conveyed to the plaintiff separate from the upland and for a use not necessary to facilitate the business of the railroad." *See* 29 *N.J.* at 242. Contrary to JCRA's argument, Justice Proctor's concurrence does not support JCRA's theory. Judge Goldmann was discussing in subdivision IX what rights existed *before* reclaiming and improving. The parties in the *River Development* case had conceded that the right to reclaim had never been exercised. At issue in *River Development* was what rights existed upon the *unreclaimed* land being conveyed to another. Judge Goldmann held in Subdivision IX that the right to secure fee ownership was appurtenant to the upland and could not be assigned or otherwise separated from the owner of the upland *prior to* reclaiming and improving. He concluded that *"Until* the right to reclaim was exercised, it could not be separated from ownership of the upland nor could it be conveyed out." *(emphasis added). See* 51 *N.J.Super.* at 481. The clear implication from that language is that *after* reclaiming, the tideland could be separated and conveyed out.

Justice Proctor's concurrence with Judge Goldmann's conclusion in Subdivision IX does not therefore imply that Justice Proctor would hold that such restrictions on ownership would exist *after* acquisition of fee ownership through reclaiming and improvement.

JCRA's construction of the United Companies Act is contrary to history and law. Upon compliance with the conditions in the United Companies Act, an absolute fee simple title is created.

## II.

JCRA contends that Tug and Barge has not proven certain facts required to establish the fee simple title of its predecessor, The United Companies. A motion for summary judgment

cannot be granted if a genuine issue of material fact is present. *See R.* 4:46–2 and *Judson v. Peoples Bank & Trust Co. of Westfield,* 17 *N.J.* 67, 73–75 (1954).

JCRA contends that four fact issues exist as follows:

"(1) Ownership of the upland area fronting upon the riparian lands to be filled;

(2) Limiting the boundary of the filled riparian lands to the line of solid filling and pier lines recommended in the report filed by the riparian commissioners appointed in 1864;

(3) Payment of $20,000 before July 1, 1869;

(4) Filing with the Secretary of State a map and description of the lands underwater on or before July 1, 1869."

Deputy Attorney General Andersen reviewed alleged factual questions in his memorandum of September 9, 1985. He concluded that the chances of Tug and Barge succeeding with respect to these four factual questions was 88%. The court has reviewed Deputy Attorney General Andersen's analysis and it appears sound. The court agrees with the Deputy Attorney General that it is quite likely that Tug and Barge will be able to establish that the conditions necessary to create fee simple title have been met and that Tug and Barge therefore had good title to the disputed tidelands. It is not clear whether these four issues rise to the level of genuine issues of material fact challenged and thereby preclude the granting of summary judgment. *See R.* 4:46–2. A condemning authority should not raise insubstantial questions. A property owner is entitled to have his just compensation determined in a fair and efficient manner. *See N.J. Turnpike Authority v. Bowley,* 27 *N.J.* 549 (1958). *See also Rockaway v. Donofrio,* 186 *N.J.Super.* 344 (App.Div.1982); *F.M.C. Stores Co. v. Borough of Morris Plains,* 100 *N.J.* 418, 426–427 (1985).

A status conference will therefore be scheduled on Monday, March 2, 1987 at 1:30 p.m. to determine whether any "genuine

issue as to any material fact challenged" is present.  *See R.* 4:46–2.