14-1652-bk
*In Re: The Great Atlantic & Pacific Tea Co.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13ᵗʰ day of February, two thousand and fifteen.

PRESENT:   AMALYA L. KEARSE,
           DEBRA ANN LIVINGSTON,
           SUSAN L. CARNEY,

                      *Circuit Judges*.

_____

IN RE: THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., ET AL.,

           *Debtor*.
-------------------------------

N. PROVIDENCE, LLC,

           *Appellant*,

                      v.                                    No. 14-1652-bk

THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC.,

           *Appellee*.
_____

FOR APPELLANT:          JONATHAN CLEMENTE (Jessie Christine Basner, *on the brief*), Clemente Mueller, P.A., Morristown, NJ.

FOR APPELLEE:                    NATHANIEL J. KRITZER (Andrew M. Genser and Nathaniel J. Kritzer, *on the brief*), Kirkland & Ellis LLP, New York, NY.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED.**

Appellant N. Providence, LLC ("NP") appeals from a judgment of the United States District Court for the Southern District of New York (Seibel, *J.*) affirming the orders of the Bankruptcy Court for the Southern District of New York (Drain, *J.*) granting the motion for summary judgment of Appellee The Great Atlantic & Pacific Tea Company, Inc. ("A&P") and denying NP's motion for summary judgment in an adversary proceeding commenced by NP seeking a declaration regarding its and A&P's obligations under a lease agreement.[1] We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

This Court reviews a district court's grant of summary judgment *de novo*. *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004). Summary judgment is appropriate when, viewing the evidence in the light most favorable to the non-moving party, *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 45 (2d Cir. 2000), "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute is not 'genuine' unless 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nabisco*, 220 F.3d at 45 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In "a contract dispute, a motion for summary judgment may be granted only where the agreement's language is

---

[1] NP challenges the April 28, 2014 opinion and order of the district court, which affirmed orders of the bankruptcy court issued on September 26, 2011, March 8, 2012, and June 21, 2013.

unambiguous and conveys a definite meaning." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (internal quotation marks omitted). Under New Jersey law, which the parties agree governs the lease agreement in this case, contracts should be read "as a whole in a fair and common sense manner," and "[i]f the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neil*, 85 A.3d 947, 958, 959 (N.J. 2014) (internal quotation marks omitted).

NP and A&P entered into a 20-year lease agreement, dated as of June 26, 2007, and amended as of October 23, 2009 (the "Lease"), pertaining to a property located at 1260 Springfield Ave., New Providence, New Jersey (the "Premises") and owned by NP. The Lease requires A&P to pay rent, as well as "Charges," which, under the terms of the Lease, include payments for A&P's proportionate share of certain taxes. A&P constructed a new store on the Premises, which obligated NP to pay a $1.9 million construction allowance (the "Construction Allowance") to A&P on or before the 90th day after A&P opened the store to the public. Section 7.G of the Lease (the "Abatement Clause") provides that, in the event this Construction Allowance is not paid on time, A&P's obligation to pay rent and Charges "shall abate . . . until [A&P's] receipt of the Construction Allowance, together with interest on the unpaid balance thereof at the Lease Interest Rate (as hereafter defined) from the due date until [A&P's] receipt of same." Jt. App'x 47. While the Construction Allowance became due on December 23, 2010, NP did not pay the Construction Allowance until September 29, 2011. A&P did not pay any rent or Charges that would otherwise have been due under the Lease for the period during which NP failed to pay.

NP commenced an adversary proceeding against A&P on June 28, 2011, seeking a declaration from the bankruptcy court that the Construction Allowance must be reduced by the

3

amount of rent that A&P had refused to pay pursuant to Section 7.G. The bankruptcy court issued various orders regarding the adversary proceeding, eventually granting a motion for summary judgment filed by A&P on the grounds that, pursuant to Section 7.G, A&P was not obligated to pay rent or Charges incurred for the period for which the Construction Allowance was due and unpaid, that this clause was enforceable, and that certain tax payments constituting Charges under the Lease were incurred during this period and thus were not owed to NP. NP appealed the orders of the bankruptcy court, and the district court affirmed the judgment of the bankruptcy court in full.

On appeal, A&P argues that the district court correctly concluded that Section 7.G, properly construed, entirely eliminated A&P's obligation to pay rent and Charges for the period beginning with the day after the Construction Allowance was due and ending with the day NP paid the Construction Allowance. NP argues that this Section must be read together with Section 27.A of the Lease (the "Landlord's Default Clause"), and that when the two clauses are read together the Lease did not eliminate A&P's obligation to pay rent and Charges during the abatement period, but instead provides for such amounts to be withheld and then set off against the Construction Allowance, with an adjustment to account for interest. The Landlord's Default Clause states that in the event of a default by NP, A&P may deduct the amount by which NP is in default plus interest "from fixed annual rent and/or Charges." Jt. App'x 69. The Landlord's Default Clause limits the amount of any such "offset, recoupment, withholding or deduction" that can be collected under certain circumstances, but specifies that this limit does not apply to Article 7 of the Lease (which includes, among several sections, Section 7.G's Abatement Clause). Jt. App'x 70.

We agree with the district court that the Abatement Clause unambiguously eliminated A&P's obligation to pay rent and Charges for the period during which NP failed to pay the

4

Construction Allowance. NP urges us to interpret an abatement under Section 7.G as constituting an "offset, recoupment, withholding or deduction" under the Landlord's Default Clause, but this is inconsistent with the ordinary meaning of "abatement," which refers to "[t]he act of eliminating or nullifying." Black's Law Dictionary 3 (9th ed. 2009). NP contends that because the Landlord's Default Clause excepts Article 7 of the Lease from its limit on deductions, the parties must have intended an abatement under Section 7.G to constitute such a deduction. By the plain terms of the Landlord Default Clause, however, the exception to its limit on deductions applies only where Article 7 provides for an offset, recoupment, withholding, or deduction—as Article 7 does, in provisions other than Section 7.G. *See* Jt. App'x 42 (Section 7.A) (providing for recoupment), 48 (Section 7.H) (same). We agree with the district court that the exception to the deduction limit in the Landlord's Default Clause should be understood "as meaning no more than what it says, without implying that Section 7.G is in fact an offset provision despite its plain language to the contrary." *In re The Great Atlantic & Pacific Tea Co.*, 510 B.R. 42, 50 (S.D.N.Y. 2014).

NP also argues that the terms of the Landlord's Default Clause must apply to a default caused by NP's failure to pay the Construction Allowance, because the clause "states that it is to be applied to 'any default hereunder' with no qualifications." Appellant's Br. at 25 (citing Jt. App'x 69). However, NP ignores the fact that the Landlord's Default Clause states that A&P "*may* . . . deduct the amount [owed] plus interest on the outstanding balance." Jt. App'x 69 (emphasis added). Even assuming that the Landlord's Default Clause applies where NP fails to pay the Construction Allowance when it is due, this permissive language affords A&P the option of deducting the amounts owed, but it clearly does not require this potential remedy to be invoked in all cases.

5

NP contends that A&P's interpretation reads the Landlord's Default Clause out of the Lease, since Section 7.G is the only provision that requires NP to pay money to A&P. We disagree. There are multiple provisions that provide for NP to make payments to A&P in certain circumstances. *See* Jt. App'x 76 (Lease § 32 (requiring NP to pay A&P 'any monies' expended by A&P to satisfy liens or encumbrances on NP's property)); Jt. App'x 100 (Lease Exhibit G (requiring NP to pay a proportional share of any tax refund to A&P)). Accordingly, this argument, like NP's other arguments, is not sufficient to overcome the plain meaning of the abatement provision.

We further conclude that Section 7.G of the Lease is an enforceable forfeiture provision, not an unenforceable liquidated damages penalty. Forfeiture involves the loss of a right, privilege or property. *See* Black's Law Dictionary 722 (9th ed. 2009) (defining forfeiture as "[t]he divestiture of property without compensation," or as "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty"). By contrast, liquidated damages provisions specify the measure of damages for a party's breach. *See Wasserman's Inc. v. Twp. of Middletown*, 645 A.2d 100, 105 (N.J. 1994) ("[C]ourts have scrutinized contractual provisions that specify damages payable in the event of breach."). While the Supreme Court of New Jersey has stated that "when a choice exists, [an instrument] is to be construed against rather than in favor of a forfeiture," *Lehigh Valley R.R. Co. v. Chapman*, 171 A.2d 653, 660 (N.J. 1961), here, the Abatement Clause clearly provides for NP to lose its right to A&P's payments of rent and Charges during such time as the Construction Allowance is due and owing, and does not provide for NP to pay A&P a sum of money. It is therefore a forfeiture provision which, under New Jersey law, is enforceable "in the absence of fraud, accident, surprise, or improper practice." *Dunkin' Donuts of America, Inc. v. Middletown Donut Corp.*, 495 A.2d 66, 74 (N.J.

6

1985). Because none of those circumstances are present in this case, the Abatement Clause is enforceable.

NP argues that even if the Abatement Clause is enforceable, the district court erred in concluding that because the Construction Allowance had not been paid, A&P was also not required to pay its proportionate share of real estate taxes for the third quarter of 2011 that constituted Charges under the Lease ("Q3 2011 Taxes"). We disagree. NP's Controller submitted an affidavit explaining that real estate taxes became due to the Borough of New Providence on August 1, 2011, with a 30-day grace period. NP initially billed A&P for 42.2% of the real estate taxes on August 24, 2011, and paid the taxes to the borough on August 29, 2011 (seeking to be reimbursed by A&P). However, A&P sought a revision in the tax bill that it had been sent by NP, stating that it owed only 42.13% of the total amount of real estate taxes. NP issued a revised invoice on October 13, 2011. NP paid the Construction Allowance on September 29, 2011, prior to issuing the revised invoice, but after A&P's payment for the initial invoice was due.

NP contends that the Q3 2011 Taxes were incurred as a Charge under the Lease when it sent the revised invoice, after the date that it paid the Construction Allowance. We disagree. The Lease unambiguously provides that A&P's obligation to pay taxes arises, at the latest, 30 days after A&P receives a tax bill from NP. NP first billed A&P for Q3 2011 Taxes on August 24, 2011; thus A&P would have been obligated to pay its share of the real estate tax no later than September 23, 2011, if NP had paid the Construction Allowance by that date, which it had not.

We have reviewed NP's remaining contentions and find them to be without merit. For the foregoing reasons, the judgment of the district court is therefore **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk